NR/MEG/ANW

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

ABOUDOU KRIGGER,
    also known as "LA,"
ANGEL RODRIGUEZ and
OMAR WESLEY,
    also known as "Hop,"

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T

(21 U.S.C. §§ 846, 841(b)(1)(C) and
841(b)(1)(D); 18 U.S.C. §§ 371 and 3551
et seq.)

20-M-25

EASTERN DISTRICT OF NEW YORK, SS:

       CHRISTOPHER KOTTMEIER, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

       In or about and between August 2019 and September 2019, within the Eastern District of New York and elsewhere, the defendants ABOUDOU KRIGGER, also known as "LA," ANGEL RODRIGUEZ and OMAR WESLEY, also known as "Hop," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense involved (1) a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance,

and (2) a substance containing 5-Fluoro MDMB-Pica, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Sections 846, 841(b)(1)(C) and 841(b)(1)(D); Title 18, United States Code, Sections 3551 et seq.)

In or about and between August 2019 and September 2019, within the Eastern District of New York and elsewhere, the defendants ABOUDOU KRIGGER, also known as "LA," ANGEL RODRIGUEZ and OMAR WESLEY, also known as "Hop," together with others, did knowingly and intentionally conspire to use one or more facilities in interstate and foreign commerce with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on, of one or more unlawful activities, to wit: Bribe Receiving in the Third Degree, contrary to New York Penal Law Section 200.10, and thereafter to perform acts to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on, of such unlawful activity, contrary to Title 18, United States Code, Section 1952(a)(3).

(Title 18, United States Code, Sections 371 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") currently assigned to the Safe Streets Task Force where I investigate, among other things, criminal gangs involved in acts of violence, drug-trafficking and weapons offenses. I am

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including recorded telephone calls, financial and telephone records and the defendants' criminal history records, where applicable; and from reports of and conversations with other law enforcement officers involved in the investigation.

I. Background

2. Starting in or about February 2019, FBI agents and investigators from the New York City Department of Investigation ("DOI") have been investigating contraband rings involving, among other things, the payment to and receipt of bribes by New York City Department of Correction ("DOC") correction officers in exchange for the introduction of illegal drugs into the George R. Vierno Center ("GRVC") and the Otis Bantum Correctional Center ("OBCC"). The GRVC and OBCC are correctional facilities located in New York City and are part of the series of DOC facilities located on Rikers Island. In connection with these investigations, agents have, among other things, reviewed telephonic call detail records, financial records, including those related to online monetary transfer tools such as Cash App, conducted surveillance, initiated stops of DOC employees prior to their entrance into the GRVC and the OBCC, and seized contraband.

3. Law enforcement agents have also reviewed recorded telephone calls made by inmates at the OBCC and the GRVC using DOC's Securus system. To use the Securus system, each inmate is assigned a personal identification number ("PIN") that must be used to access the system. Although inmates are required to use only their own PIN to make outgoing phone calls, in practice inmates frequently use other inmates' PIN to disguise

the source of their calls.[2] Inmates also receive notice at the start of each call that their conversations using the Securus system are recorded and monitored.

II. <u>The Defendants</u>

     A. *The Correction Officer*

     4. ANGEL RODRIGUEZ ("CO RODRIGUEZ") was employed by the DOC as a correction officer from on or about January 8, 2018 until September 10, 2019. Between on or about June 29, 2018 and September 6, 2019, CO RODRIGUEZ was assigned to the OBCC.

     B. *The Individual Incarcerated at the OBCC*

     5. OMAR WESLEY, also known as "Hop" ("INMATE WESLEY"), was incarcerated at the OBCC from on or about October 10, 2018 until December 20, 2019, when he pled guilty to violating New York Penal Law Section 135.65 (Coercion in the First Degree) and New York State Penal Law Sections 110/120.05 (Attempted Assault in the Second Degree) and was released on his own recognizance pending sentencing.

     C. *The Intermediary*

     6. ABOUDOU KRIGGER, also known as "LA" ("KRIGGER"), was a resident of the Bronx, New York. On December 4, 2018, he was sentenced to a term of three years' probation in connection with a conviction for violating New York Penal Law Section 155.25 (Petit Larceny). He was also released on a $100,000 bond, on or about May

---

[2] Included among the calls discussed herein are calls in which the inmate who is identified as a participant in the call improperly utilized another inmate's PIN to place the call. In those instances, a member of the investigative team who is familiar with each of the defendant inmate's voices from having reviewed dozens of recorded calls for each, has identified the inmate's voice.

21, 2019, in connection with a pending charge that he violated New York Penal Law Section 125.25 (Attempted Murder in the Second Degree).

III. The Contraband Conspiracy

    i. Seizure of Contraband from CO RODRIGUEZ and Interview

19. On or about September 6, 2019, CO RODRIGUEZ reported to work at the OBCC when a trained canine used by DOC staff alerted to the possible presence of narcotics on CO RODRIGUEZ's person.

20. A DOC staff member sought and received CO RODRIGUEZ's consent for a search of his person. CO RODRIGUEZ was informed that his cooperation with any such search was voluntary. CO RODRIGUEZ then produced packages from inside his pants, one of which was secreted near his left ankle and the other which was hidden near his groin area. The materials hidden near his groin area contained two black balloons and one grey balloon. Two of the balloons recovered from CO RODRIGUEZ's groin area each contained approximately 35 grams of marijuana (for a total of 70 grams), while the third balloon contained approximately 6.96 grams of 5-Fluoro-MDMB-Pica, which is commonly referred to a K2, both of which are Schedule I controlled substances. A subsequent laboratory analysis of the content of the package recovered from the area near CO RODRIGUEZ'S ankle contained approximately 108.2 grams of marijuana.

21. Law enforcement agents subsequently interview CO RODRIGUEZ, who was advised of his Miranda rights and further advised that his participation in the interview was not compelled as a condition of his employment. CO RODRIGUEZ agreed to waive his right to remain silent and agreed to being interviewed.

22. CO RODRIGUEZ informed law enforcement agents, in sum, substance and in part, that he had driven to work that day (September 6, 2019) and had transported contraband to be introduced into "Rikers" that day in his vehicle. CO RODRIGUEZ further stated that he had received the contraband material at a location in Queens, New York on September 5, 2019. He further stated that in addition to the contraband on his person, there was a black plastic bag containing what he believed to be marijuana in his vehicle.[3] CO RODRIGUEZ further informed law enforcement agents that he had smuggled contraband into the OBCC on numerous occasions.

    ii. <u>August 3, 2019 Meeting</u>

23. As part of the investigation, I have reviewed telephone toll records for calls between a telephone number ending in 0232 (the "0232 Number") that belongs to CO RODRIGUEZ and a telephone number ending in 5144 (the "5144 Number"), which was being used by KRIGGER, an associate of INMATE WESLEY. Specifically, the records reflect more than 15 communications or attempted communications between the 5144 Number and the 0232 Number on August 3, 2019.

24. I have also reviewed recorded Securus calls between INMATE WESLEY, who was incarcerated at the OBCC, and KRIGGER, also known as "LA," on August 2 and August 3, 2019. Based on my training and experience, I believe INMATE WESLEY and KRIGGER were discussing the packaging and delivery of contraband into the OBCC.

---

[3] Upon a search of CO RODRIGUEZ's vehicle, conducted with his consent, law enforcement agents recovered: $1,700 in cash, a mobile telephone and a plastic package containing marijuana inside a resealable plastic bag stamped "Smell Proof."

25. For instance, in a call placed by INMATE WESLEY to KRIGGER on the 5144 Number at 12:29 p.m. on August 2, 2019, INMATE WESLEY asked "how many altogether, how much is it, one pack? How much is it, seven joints?" KRIGGER replied yes, and referred to them as "little Vienna sausages." WESLEY then asked KRIGGER to grab him "two more" and to put "them" together the way he got it. INMATE WESLEY further confirmed that someone would be calling KRIGGER the next night (August 3, 2019) around 9:00 p.m.

26. On a call the following day at 11:28 a.m., INMATE WESLEY and KRIGGER again discussed packaging, with KRIGGER stating he had like "10 of them shits now" and that he made "four fingers with two inside each." KRIGGER also confirmed that he had already spoken to "Son". KRIGGER later confirmed a 9:00 p.m. meeting. INMATE WESLEY also referred to KRIGGER as "L.A.," a known alias for KRIGGER. INMATE WELSEY told KRIGGER to be on point because INMATE WESLEY was "giving the nigga $1,000 for this." Based on my training and experience and the investigation to date, I believe the reference to "Son" was to CO RODRIGUEZ, who KRIGGER intended to meet to provide contraband to be delivered to INMATE WESLEY at the OBCC. I further believe INMATE WESLEY's statement that he was "giving the nigga $1,000 for this" was a reference to the money he intended to provide CO RODRIGUEZ for bringing the contraband in.

27. Additionally, I have reviewed text messages sent to and from the 0232 Number and the 5144 Number on August 3, 2019.[4] Based on my review of these messages,

---

[4] The text messages were recovered from the 0232 Number, which CO RODRIGUEZ voluntarily provided to law enforcement agents, as set forth above, on September 6, 2019.

8

it appears that KRIGGER and CO RODRIGUEZ met on August 3, 2019. At approximately 6:27 p.m., a text message was sent from the 0232 Number to the 5144 Number stating "I'll let you know when I'm on my way" and a second text was sent at approximately 9:35 p.m. from the 0232 Number stating "Here." Based on my training and experience and the investigation to date, I believe that KRIGGER and CO RODRIGUEZ were arranging a meeting for KRIGGER to provide contraband to CO RODRIGUEZ to be delivered to INMATE WESLEY.

28. I have also reviewed a Securus call between KRIGGER and INMATE WESLEY from August 5, 2019 at 8:32 p.m. During that call INMATE WESLEY told KRIGGER, "Yo, good looking, Bro," and KRIGGER asked if "it touched? Everything, Everything?" INMATE WESLEY responded "Hell Yeah." Based on my training and experience and the investigation, I believe that INMATE WESLEY was confirming that he had received the contraband KRIGGER had delivered to CO RODRIGUEZ ("it touched? Everything, Everything?" and "Hell Yeah.").

    iii.    <u>August 9, 2019 Communications</u>

29. I have reviewed text messages sent to and from the 0232 Number and the 5144 Number on August 9, 2019. Based on my review of these messages, it appears that KRIGGER and CO RODRIGUEZ also met on August 9, 2019. At approximately 12:39 p.m. on August 9, 2019, a text message was sent from the 0232 Number to the 5144 Number stating "Hop said that be ready for a pick up tonight." Based on my training and experience and the investigation to date, I believe that "Hop" refers to INMATE WESLEY and that CO RODRIGUEZ was arranging to receive a delivery of contraband from KRIGGER. At approximately 8:51 p.m. that evening, the 5144 Number sent a text message stating

"COMING NOW" and approximately five minutes later, the 0232 Number responded: "The green deli on the corner." Based on my training and experience and the investigation to date, I believe that KRIGGER and CO RODRIGUEZ were arranging a meeting for KRIGGER to provide contraband to CO RODRIGUEZ to be delivered to INMATE WESLEY.

    iv. <u>August 18, 2019 Communications</u>

    30. I have reviewed text messages sent to and from the 0232 Number and the 5144 Number on August 18, 2019. At approximately 5:25 p.m., the 5144 Number sent a text to the 0232 Number stating "HOP SAID HE GONNA LOOK INTO THAT I GOTA THOUSAND DOLLARS FOR YOU FOR THE SAME THING WHEN CAN YOU HOLLA AT ME." Based on my training and experience and the investigation to date, I believe KRIGGER was indicating that he had $1,000 ("Thousand Dollars for you for the same thing") to deliver to CO RODRIGUEZ to pay him for delivering contraband to INMATE WESLEY at the OBCC.

    v. <u>August 31, 2019 Contraband Delivery</u>

    31. I have reviewed text messages sent to and from the 0232 Number and the 5144 Number on August 29-31, 2019. At approximately 6:25 p.m. on August 29, 2019, the 5144 Number sent a text to the 0232 Number stating "I GOT YOUR MONEY." At approximately 11:56 p.m. on August 30, 2019, the 0232 Number sent a text to the 5144 Number stating "Coming right now." Later, in the early morning of August 31, 2019, the 0232 Number sent a text message to the 5144 Number at 1:46 a.m. stating "I'm still here" and shortly thereafter, the 5144 Number responded "Getting off highway." Based on my training and experience and the investigation to date, I believe KRIGGER was indicating that

he had money to deliver to CO RODRIGUEZ to pay him for delivering contraband to INMATE WESLEY at the OBCC and that KRIGGER and CO RODRIGUEZ met to exchange contraband for money in the early morning of August 31, 2019.

32. I have reviewed surveillance video footage taken inside the OBCC on or about August 31, 2019 beginning at 6:52 p.m. In that video, I was able to observe CO RODRIGUEZ hand a wrapped item to INMATE WESLEY. Based on my discussions with DOC staff, I am aware that even though CO RODRIGUEZ was working in the OBCC on that date, his job responsibilities would not have required him to deliver any items to or have any interactions with INMATE WESLEY. Furthermore, it should be noted that INMATE WESLEY's actions constituted a security breach given that he was not authorized to be in the area where CO RODRIGUEZ was assigned to work that day.

    v.    <u>September 6, 2019 Seizure</u>

33. I have reviewed a number of Securus calls placed by INMATE WESLEY to the KRIGGER at the 5144 Number between September 4 and September 6, 2019:

>A. On or about September 4, 2019, at approximately 7:44 p.m., INMATE WESLEY placed a call to KRIGGER and told KRIGGER that he needed to contact "Whiteboy." INMATE WESLEY further stated that "3" of "Late Night," which KRIGGER confirmed as "3 zips." KRIGGER indicated that someone would sell him "3 ½ zips" for "$550." INMATE WESLEY confirmed that KRIGGER should take that price and further instructed KRIGGER should give "him" "12."
>
>B. On or about September 4, 2019, at approximately 7:51 p.m., INMATE WESLEY placed a call to KRIGGER and told KRIGGER that needed to have the "shit" ready for the following day and again reiterated that KRIGGER was going to give "him" ("12").

    C. On or about September 4, 2019, at approximately 7:56 p.m., INMATE WESLEY placed a call to KRIGGER. KRIGGER told INMATE WESLEY that he had approximately $2,000 available and INMATE WESLEY again instructed KRIGGER to give "him" 12, and to meet up with "him" tomorrow. INMATE WESLEY further confirmed that it would be "3 joints."

    D. On or about September 6, 2019, at approximately 10:58 a.m., INMATE WESLEY placed a call to KRIGGER. KRIGGER told INMATE WESLEY that KRIGGER "hollered at him" and that "he" [i.e., CO RODRIGUEZ] thought he was getting "16." KRIGGER confirmed that KRIGGER gave "him" "12." INMATE WESLEY asked KRIGGER how many he [i.e., KRIGGER] gave him [i.e., INMATE WESLEY], to which KRIGGER responded "3 – 2 black, 1 grey."

Based on my training and experience and the investigation to date, I believe that INMATE WESLEY was informing KRIGGER that KRIGGER needed to contact CO RODRIGUEZ ("Whiteboy"). I further believe that INMATE WESLEY was directing KRIGGER to pay $550 for 3.5 ounces ("zips") of marijuana and to pay CO RODRIGUEZ ("him") $1,200 ("12") for delivery of the marijuana. I also believe that on the September 6, 2019 call, KRIGGER indicated that CO RODRIGUEZ believed he was supposed to be paid $1,600 ("16") but that KRIGGER only paid him $1,200 ("12"). I also believe that CO RODRIGUEZ received three packages ("3 -2 black, 1 grey") from KRIGGER. I have reviewed the following text messages sent to and from the 0232 Number and the 5144 Number on September 6, 2019 between 1:30 a.m. and 2:00 a.m.:

| | |
|---|---|
| 0232 Number: | I'll be there in 20mins |
| 5144 Number: | Copy |
| 0232 Number: | I'm down the block be there in 2 mins |
| 5144 Number: | YOU HERE ? |
| 0232 Number: | Yeah |
| 5144 Number: | Where |

34. Based on the my training and experience and the investigation to date, I believe KRIGGER was meeting with CO RODRIGUEZ to provide him marijuana for delivery to INMATE WESLEY at the OBCC which, as set forth above, was seized from CO RODRIGUEZ later on September 6, 2019.

WHEREFORE, your deponent respectfully requests that arrest warrants be issued so that the defendants ABOUDOU KRIGGER, also known as "LA," ANGEL RODRIGUEZ and OMAR WESLEY, also known as "Hop," may be dealt with according to law.

IT IS FURTHER REQUESTED that this Court file this application and the accompanying arrest warrants under seal. I believe that sealing these documents is necessary because the defendants are not aware of the investigation. Premature disclosure of the contents of this affidavit and related documents could seriously jeopardize the investigation by giving the defendants an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, and notify confederates.

CHRISTOPHER KOTTMEIER
Special Agent, Federal Bureau of Investigation

Sworn to before me this
8th day of January, 2020

THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK